**Cecelia Mae BEYER, Plaintiff-Appellant,**

v.

**Edwin A. PICK, Defendant-Respondent.**

**No. 32744.**

St. Louis Court of Appeals.

Missouri.

April 16, 1968.

Albert George Beyer, St. Louis, for plaintiff-appellant.

Dearing, Richeson, Weier & Roberts, H. L. C. Weier, Hillsboro, for defendant-respondent.

ANDERSON, Presiding Judge.

Plaintiff, Cecelia Mae Beyer, sued Edwin A. Pick for damages for personal injuries sustained as a result of a collision between an automobile she was driving and one operated by defendant. The Court sustained the motion of defendant for a directed verdict at the close of plaintiff's case. From the judgment for defendant entered upon said verdict, plaintiff brings this appeal. In this Court plaintiff contends that the Court erred in sustaining an objection to a hypothetical question propounded to one of her witnesses, and in sustaining defendant's motion for a directed verdict.

The petition upon which the case was tried is in two counts.

1

Count I alleged that on the 21st day of October, 1963, plaintiff was driving an automobile south in the passing lane of Highway 21, a four lane public highway; that while on an uphill grade, she accelerated the speed of her car to 50 or 55 miles an hour at which time defendant's automobile struck her car in the rear causing damage to said car and injury to her.

The negligence charged against defendant was (1) operating his automobile at a high and dangerous rate of speed under the circumstances; (2) failing to exercise the highest degree of care to keep a lookout for persons and automobiles on said highway; (3) in failing to exercise the highest degree of care to have said automobile under control, by following more closely than reasonably safe and prudent under the speed, traffic and road conditions; (4) in negligently failing to sound a warning of the approach of said automobile for the protection of persons and automobiles ahead and, (5) in failing to swerve his automobile, when by doing so, he could have avoided the accident.

It was further alleged that by reason of the collision plaintiff's automobile was extensively damaged, and that plaintiff received severe and permanent personal injuries. The alleged injuries are set out in the petition. It was further alleged that by reason of the specific negligence alleged, plaintiff was required to expend the sum of $153.80 in having her automobile repaired and lost the use of said car in her business for a period of seven days; that she was unable to perform her duties as a real estate and insurance broker for a period of two days, and that her injuries continued to affect her duties in carrying on her business resulting in a loss of $5,000.-00. The prayer of the first count of the petition was for damages in the sum of $10,350.00.

The second count of said petition alleged humanitarian negligence on the part of defendant as the cause of plaintiff's damage.

Defendant's answer denied the allegations of both counts of the petition, and as an affirmative defense pled that if plaintiff was injured on the occasion in question her injuries were directly and proximately caused by the failure of the plaintiff to exercise the highest degree of care in operating her motor vehicle at said time and place.

The accident occurred about 6:00 or 6:15 the evening of October 21, 1963. It was dusk at the time and plaintiff had turned on the lights of her car. Her husband, Albert George Beyer was with her and was seated to her right. She had been traveling south on Highway 21. Butler Hill Road, an east and west highway, intersects Highway 21 north of the scene of the accident. From about two or three hundred feet south of Butler Hill Road, Highway 21 slopes downward several hundred feet to a dip, thence along said dip for some distance after which it rises in a long sweeping curve to the left. This hill has a six or seven percent grade. Plaintiff testified it was about a quarter of a mile from Butler Hill Road to the low portion of the highway.

As plaintiff drove south from the Butler Hill Road she was traveling in the curb lane. About 300 or 400 feet in front of plaintiff's car was another automobile also traveling in the curb lane. The headlights of the car in front suddenly revealed the presence of two dogs in front of it in the curb lane. The front car then reduced its speed as did plaintiff. She reduced the speed of her car to 20 or 25 miles an hour, then turned her car to the passing lane. She stated that before doing this she glanced over her shoulder, looked into the rearview mirror and turned on her left turn signal. She further stated she saw no automobile lights to her rear at the time. She also testified that she was about two car lengths behind the lead car when she turned into the passing lane. The car in front of her did not stop. As she passed that car the dogs left the highway and the speed of the car to the right was increased.

After entering the passing lane plaintiff accelerated the speed of her car. She estimated that she attained a speed of 50 or 55 miles an hour, and reached a point about half way up the hill when her car was hit from the rear. Plaintiff further testified: "Q. You have any recollection as to about how long a period of time you were out there in the outer lane before you got hit? A. It happened awful fast, but I'd say, oh, nine, ten seconds, something like that." According to her testimony she traveled 450 to 500 feet from the dip in the road to the point of impact. Her husband estimated the distance traveled from the time plaintiff turned into the passing lane until her car was hit as "close to 800 feet."

In describing the collision, plaintiff testified: "It was not a big hit, just a bump, like someone pushed you on the highway. And I didn't know what had happened, because I never, * * * had seen the car behind me, I never seen any lights or never heard any screeching of the brakes or never heard a horn or anything, * * * I know I wouldn't have pulled out in front of anyone, I was already half way up the hill when I got hit." Plaintiff further testified: "Q. Did you see the car that hit you prior to the accident? A. No sir. Q. When did you first see that car? A. When he drove, when we had the accident, that's the first time I was aware of it * *. Q. In other words, the first you seen of the car was when the car was stopped at the side of the road? A. That's right, yes sir. Q. What was damaged on your car * * *? A. The back trunk, the gasoline tank, the rear fender and the rear bumper."

Plaintiff's husband testified he never saw defendant's car prior to the accident.

Plaintiff contends that the trial court erred in sustaining defendant's motion for a directed verdict. In support of this contention it is urged that plaintiff made a case for the jury on several of the grounds of negligence pleaded, and that the evidence shows as a matter of law that plaintiff was not guilty of contributory negligence.

There were no definite objections to the court's action in sustaining the motion and in directing a verdict for defendant. In plaintiff's motion for new trial none of the points urged here were specifically called to the court's attention, said motion merely reciting that "the court erred in sustaining defendant's motion for a directed verdict at the close of plaintiff's evidence." Under Civil Rule 79.03, V.A.M.R., it is necessary, in order to preserve for review any ruling of the trial court, to make definite objections thereto either at the trial or in the motion for new trial. Plaintiff has failed to do this with reference to the Court's ruling on the motion for a directed verdict. For that reason the judgment must be affirmed. It is so ordered.

WOLFE, J., and GEORGE W. CLOYD, Special Judge, concur.