Donnie Ray BEESLEY, by his next friend,
Lillian Beesley, and Basil Beesley,
Appellants,

v.

Orvel George HOWE, Respondent.

No. 56108.

Supreme Court of Missouri,
Division No. 1.

April 10, 1972.

. Rolland L. Comstock, Devon F. Sherwood, Donald E. Bonacker, Springfield, for appellants.

Woolsey, Fisher, Clark & Whiteaker, Harold J. Fisher, Raymond E. Whiteaker, Springfield, for respondent.

HOLMAN, Presiding Judge.

Plaintiffs sought to recover damages resulting from defendant's alleged negligence when the truck defendant was driving struck plaintiff Donnie Beesley. In Count I of the petition plaintiff Donnie Beesley, a minor, sought $50,000 as compensation for personal injuries and in Count II his parents sought $25,000 as compensation for medical expenses and the loss of the services of their minor son. A jury trial resulted in a verdict for defendant on both counts. Plaintiffs have appealed from the ensuing judgment. We affirm.

On September 18, 1968, at around 6:45 a. m., Donnie Beesley, age 12, Richard Beesley, Donnie's brother, and Randy Hilburn, Donnie's nephew, were pushing or riding their bicycles east on Highway "U", a hard surface road in Greene County, Missouri, on their way to school at Walnut Grove, Missouri. The weather was clear and the road was dry. The defendant Orvel Howe was also proceeding east on Highway "U" on his way to the stockyards in Springfield, Missouri, with a load of twelve hogs in his pickup truck. Richard Beesley was at the top of the hill on which the collision occurred, ahead of Donnie and Randy who were about two-thirds of the way up the hill. Randy was ahead of Donnie. All of the boys were on the right-hand shoulder of the road.

Richard Beesley testified that he first heard the truck, then saw it coming down the hill to the west; that the truck was traveling 60–70 m. p. h. when he first saw it; and that he yelled at the other two boys. He gave conflicting testimony as to whether or not Donnie was on the pavement and as to which side of the bicycle Donnie was on. When he first heard the tires skid he turned and saw Donnie flying through the air. He further testified that the defendant repeatedly said, "It was my fault," after the accident.

Defendant testified that he had first seen the boys when he was on the hill west of the one where the collision occurred; that he had slowed down and shifted from fourth gear to third gear at the bottom of the hill where the collision occurred; that he was traveling at a speed of 30–35 m. p. h. and was about 30 feet from Donnie when Donnie, who was on the shoulder about 18–24 inches from the edge of the pavement, appeared to fall to the left onto the highway; that he cut his wheels to the left and applied his brakes, but could not avoid hitting him.

Harold Shelton, a Missouri Highway Patrolman, stated that he investigated the accident; that he took a statement from the defendant and that the skid marks left by the defendant's truck were 33 feet long.

Donnie Beesley testified that he did not hear the truck, but that he did hear Richard yell about it and tell him to hurry up; that his bicycle was off the pavement on the grass when he was hit; and that the bicycle was between him and the pavement.

Donnie suffered head and abdominal injuries and a broken leg as a result of the collision. He was taken to Cox Medical Center in Springfield where he underwent surgery and had his spleen removed. The issues on this appeal do not require that we give further details concerning his injuries.

Plaintiffs' first contention is that the court erred in failing to reprimand defendant's attorney before the jury for asking the defendant on direct examination: "Q. The trooper didn't cite you for any excessive speed or anything, did he? A. No." At this point the attorneys approached the bench and plaintiffs objected to the last question and asked that the jury be instructed that the question was improper, that the question be stricken from the record, and that the defendant's attorney be reprimanded. The court sustained the objection and when proceedings resumed before the jury, stated: "The jury will disregard the last question of counsel and the answer to that question of the witness." Questioning was then continued by defendant's attorney with no further objection by the plaintiffs.

■ All of the cases upon which plaintiffs rely point out the fact (which plaintiffs concede) that the giving of a reprimand rests within the sound discretion of the trial judge. Cotton v. Pyle, Mo. Sup., 400 S.W.2d 72; Adair v. Cloud, Mo. Sup., 354 S.W.2d 866. After recognizing that the discretion to reprimand rests with the trial judge, plaintiffs contend that the court in this case abused that discretion. We do not agree. Our review of the

record does not indicate such an abuse. The court recognized that the question was improper by sustaining the plaintiffs' objection and instructing the jury to disregard the question and answer. Under the circumstances here shown we cannot say that the court erred in failing to reprimand the defendant's attorney. "Since matters of this kind are lodged in the sound discretion of the trial judge whose opportunity to fairly appraise the seriousness of the transgression, the effectiveness of the cure and to judge whether prejudice was engendered, is far superior to ours, 'we feel constrained to defer to the trial court's discretion, which was exercised in the light of knowledge not afforded us by the printed record,' * * *" Edwards v. Lacy, Mo. Sup., 412 S.W.2d 419, 422. As indicated, we rule this point against plaintiffs.

■ Plaintiffs also contend that the trial court erred in permitting the highway patrolman, on cross-examination by defendant's attorney, to read from the accident report certain statements made by the defendant. On direct examination plaintiffs' attorney had the patrolman read two statements which defendant made to the patrolman at the scene of the accident. Cross-examination by Mr. Whiteaker, defendant's attorney, proceeded as follows:

"Q. Trooper, in direct examination, Mr. Bonacker asked you something about some statements contained in remarks you read to the jury, comments or remarks.

"A. Yes, sir.

"Mr. Bonacker: If the court please, I object to them as hearsay.

"The Court: Let's see it, Trooper. You are talking about the trooper's remarks now?

"Mr. Whiteaker: Yes, sir, remarks he read or Mr. Bonacker asked him to quote certain portions of what he thought about the—what the defendant had said. This is all intertwined together. He read part of what the defendant

said but not all of what he told the trooper.

"Mr. Bonacker: Well, that is true. I don't have any objection to what he told the trooper, but that part of the report is the trooper's remarks, description of what happened.

"Mr. Whiteaker: That's what he was asked to quote awhile ago.

"The Court: That's right. This statement starts out, 'According to driver No. 1 statement,' which would be the defendant. And all of this down here under remarks is what the defendant told you, Mr. Howe told you?

"The Witness: Yes, sir. Then we, on the remarks, we tell what we think happened at the accident scene, and—

"The Court: I want to make sure here. You look at it and just tell me whether that is what the defendant told you or what you thought had happened.

"The Witness: No, sir, this is what the defendant told me; this is what the driver told me.

"The Court: All right. I think that is proper then. You can read to the jury all of this (indicating).

"The Witness: O.K. 'According to driver No. 1 statement, two bicycle riders were going east on Highway "U", and as No. 1 approached the riders a bicycle turned in front of his vehicle and the impact knocked the rider in the ditch. Driver No. 1 stated he thought Donnie Ray Beesley's bicycle struck the bicycle of Randolph Hilburn knocking the Hilburn subject into the ditch. Driver No. 1 stated he didn't think his vehicle struck the Hilburn subject.' "

The record clearly shows that the plaintiffs' attorney withdrew his objection as to what the defendant told the highway patrolman. The difficulty arises from the fact that the statement read by the witness appears in the report under "Remarks" rather than under "Statement of Driver." However, the court did ascertain that the statement read was, in fact, what the defendant had told the trooper. We therefore rule that no error occurred.

Plaintiffs' next assignment is that the court erred in permitting defendant's attorney, in closing argument, to argue evidence not in the record. Defendant's attorney, in attempting to refute plaintiffs' evidence that the defendant had admitted fault at the scene of the accident, stated in closing argument: "If [the defendant] was out there that day telling about how he was at fault, the patrolman would have it in his report. He would have told him that. Mrs. Griffin would have heard it." After plaintiffs' objection, the court stated: "Well, the jury will remember the evidence, who was present, when statements were made." Plaintiffs argue that the comment constituted prejudicial error. They maintain that the argument had the effect of telling the jury that they should not find the defendant at fault since the trooper did not think he was at fault. Defendant's argument had nothing to do with whom the trooper thought was at fault. Rather, it sought to counter plaintiffs' evidence to the effect that the defendant had made a statement that he was at fault. As we construe this statement the attorney was simply arguing that if defendant had repeatedly stated at the scene that he was at fault (which statement he denied) Mrs. Griffin (who lived nearby and came to the scene immediately) would have heard it and defendant would have stated such to the trooper and it would have been in the report. The trooper read defendant's statement from the report and it did not contain any admission of fault and Mrs. Griffin's testimony did not include any such admission. We see nothing improper in the argument complained of. It was not unreasonable to argue that if defendant had stated many times that he was at fault someone other than Donnie's mother and brother would have heard it. The regulation of argument is a matter

largely within the discretion of the trial court and it is the policy of the law to indulge a liberal attitude in ruling contentions relating to jury argument. Riley v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 666. We rule that the manner in which the court disposed of plaintiffs' objection was not an abuse of discretion.

Plaintiffs also contend that the court erred in allowing the defendant during his closing argument to comment on the failure of the plaintiffs to call Randy Hilburn as a witness. Plaintiffs contend that Randy was equally available and hence the court should not have permitted defendant to argue that an unfavorable inference should be drawn against plaintiffs by reason of his absence. "The term 'available,' in this connection, does not mean merely available or accessible for service of compulsory process, or subpoena. The question whether a witness 'is "available" to one or the other of contending parties depends upon such matters as the one party's superior means of knowledge of the existence and identity of the witness, the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case, and the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation, and make it natural that he would be expected to testify in favor of the one party and against the other.' " Trzecki v. St. Louis Public Service Co., Mo.Sup., 258 S.W.2d 676, 678.

Randy Hilburn was the nephew of plaintiff Donnie Beesley. Donnie had spent the night before the accident with Randy Hilburn and the two boys were on their way to school together when the accident occurred. They were both involved in the occurrence in that Randy was also knocked into the ditch. Under these circumstances we rule that Randy was not equally available and that the failure of plaintiffs to call him as a witness justified the argument in question. Williams v. Ricklemann, Mo.Sup., 292 S.W.2d 276 [13]. The court's ruling was not erroneous.

There is no merit in plaintiffs' contention that the trial court abused its discretion in failing to grant them a new trial because the verdict was against the weight of the evidence. This court has recently said that "[t]he weight of the evidence is not open to question in this court. White v. Rohrer, Mo.Sup., 267 S.W.2d 31, 34 [2]. The determination whether a verdict is against the weight of the evidence is a matter within the exclusive province of the trial court. Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558, 560 [5]. The question having been raised in his motion for new trial and ruled adversely to plaintiff, that is the end of the matter." Baumle v. Smith, Mo.Sup., 420 S.W.2d 341, 345. However, assuming that we may review the court's ruling to determine if it abused its discretion, we rule upon this record that no such abuse is indicated.

Points IV, V, and VII involve contentions concerning order of proof, admission of evidence, and argument which relate to the extent of Donnie's injuries and the issue of damages. We consider these points together because we have the view that none of them can be said to constitute prejudicial error. This for the reason that, since it is conceded that Donnie sustained some injuries as a direct result of this occurrence, the matters complained of would bear only on the extent of the damages, and, in view of the defendant's verdict, the jury never reached that issue. The well-established rule here applicable is that "where evidence or argument is before the jury clearly bearing only upon the issue of the extent of plaintiff's damages, and the jury's verdict demonstrates that the jury has failed to reach that issue, plaintiff is not prejudiced thereby." Merritt v. Mantony, Mo.Sup., 353 S.W.2d 768, 769.

Plaintiffs seek to persuade us not to apply the quoted rule because they say that the rulings in question had the effect of

impairing their credibility and may have caused the jury not to believe their testimony on issues concerning liability. It is our view that this argument is entirely too speculative to be accepted and, as indicated, we will apply the rule in question, which is determinative of the assignments under consideration.

Since we have concluded that none of plaintiffs' contentions constitute reversible error we find it unnecessary to consider defendant's point that plaintiffs did not make a submissible case.

Judgment affirmed.

All concur.