**William TUCHSCHMIDT, Respondent,**

v.

**Edward J. CANAVAN et al., Defendants.**

**No. 39939.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 24, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Application to Transfer Denied
Nov. 14, 1979.

Ernest L. Keathley, Jr., St. Louis, Donald L. Bland, Clayton, for defendants.

Donald L. James, St. Louis, for respondent.

REINHARD, Presiding Judge.

Defendants appeal from a verdict and judgment in favor of the plaintiff in the amount of $1,000. The case involved an automobile accident.

The accident occurred on January 14, 1974 at the intersection of Landsdowne and Jamieson in the City of St. Louis. Jamieson runs in a generally northerly-southerly direction. Landsdowne runs in a generally easterly-westerly direction. The intersection of Jamieson and Landsdowne is controlled by electric traffic lights. There are three northbound and southbound traffic lanes on Jamieson plus two lanes about 8 to 10 feet wide. A small median divides the north and southbound lanes. There are two traffic lanes and a parking lane on westbound Landsdowne. Plaintiff was travelling south on Jamieson. Defendant, Edward J. Canavan was travelling west on Landsdowne. According to plaintiff as he approached Landsdowne the traffic signal was red for motorists proceeding south on Jamieson. He brought his vehicle to a stop in the middle traffic lane. There was a vehicle to the left of his auto waiting at the red light and vehicles behind him. He testified that he waited 30 to 40 seconds for the light to change. A few seconds after the light changed to green he and the car on his left started forward. He proceeded five to six feet forward when his vehicle and the one operated by defendant Canavan collided. There was testimony that defendant was travelling in excess of 40 miles per hour. All plaintiff saw was a blur.

Plaintiff sued defendant Edward Canavan for damages to his automobile. Defendant counterclaimed for personal injuries, with his wife joining in a separate count for loss of consortium. The jury returned a verdict in the amount of $1,000 on plaintiff's claim and against defendants on the counterclaims.

On appeal, defendants allege that the trial court erred in not granting their motion for judgment notwithstanding the verdict as plaintiff's testimony established his contributory negligence as a matter of law. They based this point upon their contention that plaintiff admitted that he failed to look to the left before he proceeded into the intersection.

■ · In order for the defendants to obtain a reversal on this point, we must find that from all of the evidence and the reasonable inferences therefrom, viewed in a light most favorable to the plaintiff, that the only reasonable conclusion is that plaintiff was negligent and his negligence was a proximate cause of his injury. *Johnson v. Burli*, 518 S.W.2d 601 (Mo.App.1967); *Holtmeyer v. Scherer*, 546 S.W.2d 29 (Mo.App. 1976).

Plaintiff testified on direct examination that he did not recall whether he turned and looked to the left. He indicated that the car to his left started forward slowly, and that he started forward at about the same rate. He stated that he did not see the defendant's car before the collision. The light had been green a few seconds before he moved forward. On cross-examination, he stated that he was looking at the light ahead. He did not know how far down Landsdowne he could have seen. He again stated that he did not recall if he had looked down Landsdowne or not. However, when asked later on cross-examination, "Did you look to the east to see if the car was coming westbound on Landsdowne?" he answered, "No, I don't believe I did." He further answered, "If I had looked I don't know if I would have seen it because of the car next to me." Further he stated: "to the best of my knowledge I did not look."

Plaintiff offered as witnesses, John L. Stevens who was driving the vehicle to his immediate left and Thomas E. Siedhoff, who was driving the vehicle to his rear. They agreed with plaintiff's testimony as to the light being red, and waiting for about 30 seconds before it turned green. Although Stevens looked to the left and did not see defendant's automobile, he said as he started forward, he could see plaintiff's car moving with him. As he began moving out into the street he did not see defendant's car, "I just saw a blur flash in front of me." Siedhoff's automobile was directly behind plaintiff's. He waited between 30 and 45 seconds for the light to change. He said when the light changed that plaintiff did not move forward immediately, but waited for approximately two to three seconds. He considered blowing his horn to give plaintiff notice that the light had changed to green. He stated that Stevens' car was between plaintiff's and defendant's car until such time as defendant came across the front of plaintiff's automobile.

When asked by defense counsel if a driver sitting where plaintiff was would have his view obstructed by a car on the left, he responded, "It depends. It's quite possible that it could obstruct the vision. On the other hand, it is possible that he could be seen in front of the windshield or through the windshield of the other car."

Defendants offered in evidence photographs taken out of the window of his automobile with another vehicle on the left at the Landsdowne and Jamieson intersection. However, there was no testimony as to the relative size, location, etc. of the cars portrayed in the photographs and those involved in the accident.

█ It is the law of Missouri that a motorist is not entitled to rely solely on a favorable light. He has a duty to maintain a lookout both laterally and ahead to see whatever could be seen under the circumstances. *Downing v. Dixon*, 313 S.W.2d 644 (Mo.1958). In order to determine whether a party's testimony amounts to a judicial admission, we must consider his testimony as a whole, and in order for it to be relied on as an admission it must be clear and unqualified, not the result of a mistake, oversight, misunderstanding, or lack of definite recollection. *Johnson v. Bush*, 518 S.W.2d 601, 607 (Mo.App.1967). An examination of plaintiff's entire testimony does not lead us to conclude that his testimony as to whether he looked to the left was clear and unqualified nor can we say that it was not the result of a lack of a definite recollection. We believe there remained an issue for the jury on the issue of negligence as to whether plaintiff looked to the left.

█ Furthermore, there remains a jury question as to the issue of proximate cause. Plaintiff was not required to see what could not be seen. If he had not looked a jury question remained as to whether his failure to look at such time and place had any causal connection with the collision. *Fuzzell v. Williams*, 288 S.W.2d 372 (Mo.App. 1956). The jury could have inferred from the evidence that the automobile on his left blocked his view notwithstanding defendant's photographs. Therefore, defendants' first point is without merit.

█ Finally, defendants argue that it was error to read into the record part of a

medical report on defendant because the report was inadmissible hearsay. The part of the report read into the record pertained to the issue of damages sustained by the defendant. Obviously, the jury did not reach the issue of defendants' damages as it found for plaintiff and against defendants on the issue of liability. Hence, any error was harmless and not prejudicial to defendants' case. *Beesley v. Howe,* 478 S.W.2d 649, 653 (Mo.1972); *Moore v. Rollmo Corporation,* 575 S.W.2d 859, 862 (Mo.App.1978).

Affirmed.

GUNN and CRIST, JJ., concur.